UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------------- X
CONNOR SPENCE, individually and as President of the
Amazon Labor Union, International Brotherhood of
Teamsters Local 1; SULTANA HOSSAIN, individually
and as Recording Secretary of the Amazon Labor Union,
International Brotherhood of Teamsters, Local 1;
PASQUALI CIOFFI; JULIAN MITCHELL-ISRAEL;
and AMAZON LABOR UNION, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, LOCAL 1,

Case No. 24-cv-9823

**VERIFIED COMPLAINT
AND JURY DEMAND**

                                    Plaintiffs,

                     v.

NEW YORK CITY POLICE DEPARTMENT, CITY
OF NEW YORK; GLORISEL LEE, Commanding
Officer of the 121st Precinct of the NYPD, individually
and in her official capacity; MATTHEW DIVITO,
Captain of the 121st Precinct of the NYPD, individually
and in his official capacity; MATTHEW PIZZULLO,
NYC Police Officer, individually; ANNEURYS DE LA
CRUZ, NYC Police Officer, individually; RAFAEL
PIMENTEL ESCOTO, NYC Police Officer,
Individually; SALVATORE ANNUNZIATA, NYC
Police Officer, individually; ANDREW BROWN, NYC
Police Officer , individually; JADD ZAHRIEH, NYC
Police Sgt.; SEAN MONDELLO, NYPD Community
Affairs Sgt, individually; PRESCILO SIBEL, NYC
Patrol Boro Staten Island Community Affairs, Police
Officer, individually; ANTONIO LOPICCOLO, NYC
Police Officer, individually; JOHN DOES 1-4, NYC
Police Officers, individually; AMAZON.COM
SERVICES, LLP; ADEBODUN AINA, Operations
Manager, Amazon.Com Services, LLP, and JOE TROY,
Regional Loss Prevention Manager, Amazon.Com
Services, LLP,

                                    Defendants.
 ------------------------------------------------------------------- X

        Plaintiffs, by their undersigned attorneys, Advocates for Justice Chartered Attorneys, as

and for their Verified Complaint, allege as follows.

## PRELIMINARY STATEMENT

1.      This is an action by the Amazon Labor Union, International Brotherhood of Teamsters, Local 1 (hereinafter the "Amazon Labor Union," or "ALU), and officers and staff members of ALU, brought to address the violation of the Constitutional and statutory rights of members of ALU on and near the property of Defendant Amazon.Com Services, LLP (hereinafter "Amazon") caused by the joint efforts of Amazon, its agents Adebodun Aina, Joe Troy, the NYC Police Department, and individual officers of the NYC Police Department ("NYPD") acting under color of their authority, to deprive Plaintiffs, and members of ALU of those Constitutional and Statutory rights; and to enjoin future deprivation of those rights to engage in lawful expressive activity and concerted labor activity, by Amazon, Adebodun Aina, Joe Troy, NYPD, and the individual Defendant NYPD Commanding Officer, Captain, Sergeants, and Police Officers in the exercise ALU's members' constitutional and statutory rights to engage in lawful expressive activity in violation of the First Amendment to the United States Constitution and Section 7 of the National Labor Relations Act ("NLRA"). 29 U.S.C. § 157.

2.      Since on or about June 14, 2024, when ALU and IBT members and staff have attempted to engage in such activities on and around the parking lot and public streets adjoining Amazon's Staten Island warehouse known as JFK8, Defendants, acting under color of state law, have prevented them from doing so at every turn, even though the National Labor Relations Board has prohibited Amazon from prohibiting such activities, and has deemed any interference in those activities as being unlawful. The Defendants' activities have included arresting Plaintiff Connor Spence, the President of ALU, for "trespass," at the direction of Amazon, and its agents Joe Troy and Adebodun Aina, and then, after taking Spence and others to the precinct, failing to transmit

2

summonses to the Criminal Court. On three occasions Plaintiffs Spence, Hossain and Cioffi have had the charges against them dismissed.

3.      ALU, and its parent union, the International Brotherhood of Teamsters (IBT) have announced that there will be a national strike against Amazon commencing at 12:01 AM on December 21, 2024, because t of Amazon's unlawful refusal to bargain with ALU, despite an order to do so from the National Labor Relations Board (NLRB).

4.      As ALU engaged in small scale activity in preparation for the strike, on the side of the road outside of JFK8, and on the streets adjacent to JFK 8, the NYPD, and the individual Defendants, have made it clear that they will not permit any picketing activity anywhere near the JFK8 Amazon warehouse, even if that picketing is on the side of the road, or on the road but not disruptive of traffic. On the morning of December 19, 2024, the Defendant NYPD, and a number of Defendant Police Officers, at around 7am, actually dismantled, and seized a tent structure set up on a grassy area on the side of the road across from JFK8, which had supplies and refreshments underneath it. It is clear that the NYPD, 121st Precinct Commanding Officer Lee, and 121st Precinct Captain DeVito and the remaining individual police officer defendants, will become involved in blocking and arresting picketers as the strike unfolds beginning on December 21, 2024.

5.      Plaintiffs seek declaratory and injunctive relief against Defendants ordering them to permit ALU members to engage in expressive activity in the parking lot, and on or around public sidewalks and rights-of-way surrounding Amazon's facilities at JFK8, and at other facilities owned by Amazon in Staten Island and around New York City, without the unlawful disruption of those activities by the NYC Police Department, at the behest of Amazon. Plaintiffs also seek damages for the interference in Plaintiffs' free speech and NLRA rights to date.

## JURISDICTION AND VENUE

6.    The jurisdiction of this Court is invoked pursuant to 28 USC Section 1331, and 42 USC Section 1983.

## PARTIES

7.    Plaintiff AMAZON LABOR UNION, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 1 ("ALU") is a labor union that was selected as the exclusive bargaining representative by a majority of employees at Amazon's JFK8 fulfillment center, located at 546 Gulf Ave, Staten Island, NY 10314, in an election conducted by the National Labor Relations Board ("NLRB") in April 2022. Certification of these results was issued by the NLRB on August 29, 2024; that certification is not subject to further appeal. ALU is affiliated with the International Brotherhood of Teamsters. ALU has capacity to sue under Federal Rule of Civil Procedure 17(b)(3)(A) because it is an unincorporated association suing to enforce a substantive right existing under the U.S. Constitution on its behalf and on behalf of its members. The International Brotherhood of Teamsters ("IBT") is a labor organization with hundreds of affiliated Local Unions throughout the United States, including ALU-IBT Local 1.

8.    CONNOR SPENCE is an employee of Amazon, as that term is construed under the National Labor Relations Act, employed at the JFK8 Warehouse, and, since July 30, 2024, is the elected President of ALU. From October 2021 until December 2022, he served as Vice President and Secretary Treasurer of ALU. He was unlawfully terminated from his employment by Amazon on or about November 2023 for speaking to other employees about a planned lawful job action, because the conversation occurred more than 15 minutes after his shift ended.

9.    SULTANA HOSSAIN is an employee of Amazon, as that term is construed under the National Labor Relations Act, employed at the JFK8 Warehouse and, since July 30, 2024, is

the elected Recording Secretary of ALU. He was unlawfully terminated from her employment by Amazon in 2023 for engaging in activities in support of ALU.

10.    PASQUALI CIOFFI is an employee of Amazon, as that term is construed under the National Labor Relations Act, employed at the JFK8 Warehouse, and, since July 30, 2024, has been the Chief of Staff for ALU. He was unlawfully terminated from his employment by Amazon in 2023, for engaging in activities in support of ALU.

11.    JULIEN MITCHELL-ISRAEL is an employee of Amazon who was employed at the LDJ5 Warehouse (which is across the street from JFK8) until around July 1, 2024, and, who between 2021 and 2023, acted as a Field Director for ALU at the LDJ5 Warehouse, and who on July 17, 2024 was working as an IBT organizer. He remains employed by the IBT.

12.    Defendant NEW YORK CITY POLICE DEPARTMENT, CITY OF NEW YORK ("NYPD") is a NYC Mayoral Agency, located at 1 Police Plaza, New York, NY 10038. The NYPD is the primary law enforcement and investigation agency servicing New York City.

13.    Defendant GLORISEL LEE is the Commanding Officer of the 121st Precinct of the NYPD, in which Amazon's JFK8 and LDJ5 facilities are located. As such, Defendant Lee has final policymaking authority within the Precinct, which includes responsibility for overseeing the Precinct's operations, establishing its policy and practices, and determining the manner and extent of its enforcement of the law within the Precinct's jurisdiction. Defendant Lee is sued in her official capacity and as an individual who acted under color of her government authority, but in excess of that authority. Defendant Lee is sued in her official capacity and as an individual who has acted, and can reasonably be expected to act, under color of her government authority, but in excess of that authority. Defendant Matthew Divito is a Captain of the NYPD and is second in command at the 121st Precinct. Divito is sued in his official capacity and as an individual who acted under color

of his government authority, but in excess of that authority. Defendant Lee is sued in his official capacity and as an individual who acted, and can be expected to continue to act, under color of his government authority, but in excess of that authority.

14.    MATTHEW PIZZULLO is a NYC Police Officer; ANNEURYS DE LA CRUZ is a NYC Police Officer; RAFAEL PIMENTEL ESCOTO, NYC Police Officer; SALVATORE ANNUNZIATA is a NYC Police Officer; ANDREW BROWN is a NYC Police Officer; JADD ZAHRIEH, is a NYC Police Sgt.; SEAN MONDELLO, is an NYPD Community Affairs Sergeant; PRESCILO SIBEL, NYC is a Patrol Boro Staten Island Community Affairs Police Officer; SALVATORE ANNUNZIATA is a NYC Police Officer; ANDREW BROWN is a NYC Police Officer; JADD ZAHRIEH is a NYC Police Sgt; SEAN MONDELLO is an NYPD Community Affairs Officer; Defendant PRESCILO SIBEL is an NYPD Community Affairs Police Officer; Defendant ANTONIO LOPICCOLO is a NYC Police Officer; and Defendants JOHN DOES 1-4 are NYC Police Officers or Sergeants. They are referred to as a group, below, as the "Individual NYPD Defendants. All were stationed at all relevant times at the 121st Street Precinct in Staten Island and reported to Defendants Lee and Divito. All are sued as individuals who acted under color of their government authority, but in excess of that authority.

15.    Defendant AMAZON.COM SERVICES, LLP ("AMAZON") is a corporation which employs 350,000 or more people throughout the United States, approximately 50,000 of whom work in NYC. It is incorporated in Delaware. It engages in on-line commerce, obtaining goods ordered on-line and delivering those goods to customers. It's NYC headquarters is located at 450 West 33rd Street, in Manhattan.

16.    Defendant ADEBODUN AINA is an Operations Manager for Amazon.

17.    Defendant JOE TROY is Regional Loss Prevention Manager for Amazon.

18.     Amazon, Adebodun Aina, And Joe Troy collaborated with the NYC Police Department, Defendant Lee, Defendant Divito, and the other individual NYPD Defendants in bringing about, and directing the violation of Plaintiffs' rights, and therefore are deemed state actors under 42 USC Section 1983.

## STATEMENT OF FACTS

19.     Plaintiffs incorporate by reference all allegations and assertions contained in paragraphs 1-18 as if set forth fully herein.

**Background Facts**

20.     JFK8 is a massive (855,000 sq. ft. warehouse) located at 546 Gulf Avenue, in Staten Island, New York, which employees between 5000 and 8000 people, all of whom sort packages which arrive from distant locations, and which have to be directed to smaller locations in localities with the NYC metropolitan area. JFK8 is surrounded by a parking lot which had been publicly accessible until around June 14, 2024, and its front door is about 150 yards from a bus stop where buses run by the NYC Transit Authority drop off and pick up passengers.

21.     Beginning on April 20, 2021, Plaintiff Connor Spence and other ALU members set up tables at a bus stop across the street from JFK8 to begin the process of gathering signed authorization cards from Amazon workers interested in forming the ALU. All five at the tables were present or former Amazon employees at JFK8.

22.     Under the rules of the National Labor Relations Board (hereinafter "NLRB"), union organizers needed a minimum of 30% of the workforce to sign authorization cards for the NLRB to approve union certification elections.

23.     In April of 2021, approximately 5,000 workers were employed at JFK8. Amazon later enlarged the workforce to 8,325 employees.

24.     On October 25, 2021, the ALU organizers submitted the signed authorization cards of approximately 2,000 JFK8 employees to the NLRB and requested approval of a workplace election.

25.     On January 26, 2022, the NLRB confirmed that ALU had established a sufficient showing of interest and approved the union's request for a workforce election at JFK8.

26.     On February 2, 2022, ALU submitted approximately 500 signed authorization cards to the NLRB relating to the Amazon Sorting Facility designated as LDJ5, which sits on the other side of the parking lot on the front-door side of JFK8.

27.     On February 4, 2022, the NLRB confirmed that ALU had established a sufficient showing of interest at LDJ5 and approved the request for a workforce election at that facility.

28.     On February 16, 2022, ALU, Amazon and the NLRB officials negotiated the terms of the election at JFK8. The voting was scheduled to occur on March 25, 26, 28, 29, and 30 of 2022. Two sessions were scheduled each day from 8 am to 1 pm and 8 pm to 1 am. Voting occurred in the parking lot area in front of the JFK8 Warehouse.

29.     On March 18, 2022, ALU, Amazon and the NLRB negotiated the terms of the election at LDJ5The voting was scheduled for April 25, 27, 28, and 29 of 2022. Three sessions were scheduled each day from 4:30 am to 8:30 am, 2 pm to 6 pm, and 8 pm to 11 pm.

30.     Between April 25 and 29, 2022, the JFK8 workforce voted, utilizing space in the parking lot area.

31.     From March 31 to April 1, 2022, the JFK8 ballots were counted. Of the 8,325 eligible workers, 4,852 voted. 2,654 ballots were cast in favor of establishing the union, and 2,131 were cast in opposition. The Regional Director of the NLRB certified ALU as the representative

of the full-time, permanent workforce at JFK 8. ALU 's win was a story which was covered by news media around the world.

32.    The success of April 1, 2022, marked the first time that a union in an Amazon facility in U.S. had won an election.

33.    The vote soon thereafter at LDJ5 was not successful, but efforts to organize the employees in that warehouse continue.

34.    Amazon filed lengthy objections to the certification of ALU at JFK8. Hearings took place through June 2023.

35.    On August 29, 2024, after a long hearing, the NLRB denied all of Amazon's objections, and certified the election at JFK 8. See Exhibit A.

**Amazon Issues Its "No Solicitation Rule" and Then Agrees that its Rule Is Unlawful**

36.    In 2021, while the ALU was conducting its organizing drive at JFK8 and LDJ5, and elsewhere throughout the United States, Amazon issued new "Rule," which stated :

> Off-Duty Requirements: Effective immediately, only those employees who are scheduled to work are permitted to be in our facilities or on our property. Employees who are scheduled to work may arrive on site up. to 15 minutes before their shift starts. All Employees are expected to. clock in/out as usual. Employees are expected to timely depart the site, within 15 minutes, after their shift ends.

37.    Following the filing of charges by individual employees against Amazon, the NLRB issued a Complaint which alleged, inter alia, that the Respondent violated Section 8(a)(1) of the NLRA by unlawfully implementing, maintaining, and enforcing an overly broad and discriminatory rule that prohibited off-duty employees from being on the Respondent's property, including outside its facilities in nonwork areas, more than 15 minutes before or after their shifts.

38.    On December 21, 2021, Amazon agreed to settle the complaint. The settlement agreement required the Respondent to

post and electronically distribute an attached notice at all of the Respondent's fulfillment centers nationwide. The settlement agreement also contained the following provisions, which state, in relevant part, as follows:

COMPLIANCE WITH NOTICE—

The Charged Party will comply with all the terms and provisions of said Notice.

PERFORMANCE—

The Charged Party agrees that in case of non-compliance with any of the terms of this Settlement Agreement by the Charged Party, and after 14 days' notice from the Regional Director of the National Labor Relations Board of such non-compliance without remedy by the Charged Party, the Regional Director will issue a Complaint that includes the allegations covered by the Notice to Employees, as identified above in the Scope of Agreement section, as well as filing and service of the charge(s), commerce facts necessary to establish Board jurisdiction, labor organization status, appropriate bargaining. unit (if applicable), and any other allegations the General Counsel would ordinarily plead to establish the unfair labor practices. Thereafter, the General Counsel may file a Motion for Default Judgment with the Board on the allegations of the complaint. The Charged Party understands and agrees that all of the allegations of the Complaint will be deemed admitted and that it will have waived its right to file an Answer to such Complaint. The only issue that the Charged Party may raise before the Board will be whether it defaulted on the terms of this Settlement Agreement.

39.    Finally, the notice attached to the settlement agreement. provided, in relevant part:

WE WILL immediately, upon the approval of this Settlement Agreement by the Regional Director, Region 13, of the National Labor Relations Board, at each of our fulfillment centers and delivery stations in the United States rescind and give no effect to the policies we issued and maintained that (1) restricts your access to nonworking areas beyond 15 minutes of the start or end of your shifts, and (2) restricts access to the interior of the site or any working area, and

WE WILL notify employees.at each of our fulfillment centers, sortation centers receive centers, specialty, and delivery stations nationwide that we have done so. In the event we wish to reinstate a lawful rule regarding off-duty employee access to our buildings, we will only do so after the 60-day posting period for the instant charges has concluded and spoke notification to employees must also state

that the rule will not be discriminatorily enforced against employees
exercising in protected activity.

39.     Amazon then proceeded to reissue the Rule to discipline and fire ALU leaders and
suppress Section 7 concerted activity in the JFK8 warehouse and elsewhere.

40.     These actions precipitated the issuance of more than a dozen new complaints by the
NLRB, which were consolidated for trial in January 2024. A copy of the Consolidated Complaint
is annexed as Exhibit B. One of the Amazon employees whose discipline and discharge were
alleged to have been carried out unlawfully was/is Plaintiff Connor Spence. That Complaint has
been tried, and the parties await a decision by an Administrative Law Judge.

41.     At the same time the NLRB issued a new Complaint alleging that the reissued Rule
violated its December 2021 Settlement Agreement because the reissued policy did not provide
exceptions or guarantees related to non-enforcement against protected activity.

42.     On or about June 27, 2023, the Acting Regional Director for Region 9 of NLRB
issued a Complaint addressed to the reissuance of the Off-Duty Access Rule. The Regional
Director demanded that Amazon rescind the Rule, or the NLRB would enter a default judgment
pursuant to the terms of the December 2021 agreement. A Default Judgment was entered on
August 29, 2024, when Amazon refused to rescind the Rule.

43.     On September 10, 2024, the National Labor Relations Board affirmed that Default
Judgment (see Exhibit B), found more than 20 violations of the NLRA resulting from enforcement
of the Rule, mostly at JFK8, and issued an Order that Amazon must.

Cease and desist from

(a) Promulgating, maintaining, and enforcing rules or policies that
unlawfully prohibit off-duty employee access to exterior, nonwork
areas of the Respondent's facilities.

(b) In any like or related manner interfering with, restraining, or
coercing employees in the exercise of the rights guaranteed by
Section 7 of the Act.

**Amazon Refuses to Bargain**

44.    At all times since the certification of the representation election, Amazon has refused to bargain with ALU.

45.    As a result, the NLRB issued a Complaint alleging an unlawful failure to bargain. See Exhibit C. Because Amazon, in its defense, has relied only on arguments previously litigated and rejected by the NLRB, the NLRB General Counsel has moved that the NLRB grant Summary Judgment affirming the unlawful refusal to bargain (See Exhibit D). Amazon's response has been to file what is essentially a mandamus petition in U.S. District Court in San Antonio, Texas (!)trying to block the NLRB from acting. (see Exhibit D).

46.    It is clear that Amazon will spend years pursuing legal appeals, even on specious grounds, in order to avoid bargaining with ALU. It is critical at this point that ALU and its members be allowed to engage in concerted activity to put pressure to bring Amazon to the bargaining table.

**ALU Engages Section 7 Protected Activity in the Parking Lot Throughout March Up Until Mid-June 2024**

47.    On January 4, 2024, U.S. District Judge signed a Consent Decree which allowed the members to vote about whether to have an officer election, and if they so voted, decreed that the election had to be completed by July 30, 2024.

48.    On or about mid-February 2024, ALU members including Spence and Hossain distributed literature in the JFK 8 parking lot, near the front entrance, announcing that the union would be holding a referendum vote during the last week of February to decide whether to subsequently hold officer elections.

49.    Each day during the period February 27 – March 2, 2024, ALU, under the supervision of a Neutral Monitor approved by Judge Donnelly, set up a registration and voting booths, to the right side of the entry door to JFK8 front door. Members of ALU greeted employees

as they entered and left and encouraged them to vote. Connor Spence and Sultana Hossain worked at the table, and distributed literature throughout the 5-day vote. The table also contained ballot collection boxes where employees could deposit their filled-in ballots.

50.    On February 27, 2024, Amazon security members instructed Connor Spence to leave the premises because he was not an active employee. Richard Levy, the neutral monitor the NLRB appointed to oversee the referendum vote and present at the time, contacted Amazon counsel by phone to inform them that the referendum vote tabling was lawful activity pursuant to the Consent Decree. Counsel for Spence wrote to Amazon Counsel and threatened to seek relief from Judge Donnelly if they interfered with Spences right to engage in the voting activity. That letter is annexed as Exhibit E. Spence and Hossain spent most of the rest of the week greeting employees and encouraging them to vote.

51.    On March 3, 2024, it was announced that a majority had voted in favor of holding officer elections.

52.    Throughout March, April, and early May 2024 plaintiffs Connor Spence, Sultana Hossain, Pasquali Cioffi, and other ALU members set up a table, again located in the parking lot adjacent to the main entrance, with literature discussing the candidacy of Spence for ALU President, and the platform of his slate of candidates. The group set up their table at least two times per week. They distributed material concerning the upcoming officer nominating meeting, during which the members would decide which officers would appear on the ballot for officer elections (see Exhibit F). Further, they collected signatures on multiple petitions concerning workplace conditions such as excessive heat in the warehouse. All such activity falls amply within the boundaries of federally protected speech and conduct.

53.     During the March 2024 and April 2024 tabling, Adebodun Aina and other Amazon managers repeatedly, though intermittently, informed Spence, Hossain, Cioffi, and other terminated employees contesting their discharges at the NLRB, that they could not continue their activity. Management took no subsequent action following these instructions and did not call the police.

54.     On or about the second week of May 2024, ALU held its nominations meeting during which Connor Spence and Sultana Hossain were selected to run on a slate together as President and Recording Secretary, respectively.

55.     In May 2024, after the Nominations Meeting, Connor Spence, Sultana Hossain and other ALU members increased the frequency and visibility of their activity. They conducted the tabling activity near daily and Spence and Hossain donned brightly colored vests to distinguish themselves as ALU leaders. Notably, the purpose of the activity remained the same: they campaigned for officer positions in advance of ALU election, for which no date had been set. Amazon managers escalated their interference with the tabling and now demanded that everyone cease such activity, without distinguishing between active and nonactive employees as before. Amazon managers further increased their surveillance of active ALU members by demanding to see identification badges of those involved with the tabling, despite the reality that these managers recognized the vast majority of the most active members who were plainly visible at the table for several months prior to such escalation.

56.     If Amazon reasonably believed the activity was unlawful, managers had ample opportunity to call the police. ALU members were engaging in Section 7 protected activity for several months .

**ALU Agrees to Affiliate with the Teamsters Subject to Membership Vote – First Arrest**

57.     On June 3, 2024, the then ALU leadership signed an agreement to affiliate with the IBT, subject to a membership vote.

58.     That vote was scheduled for June 15-18, at ballot boxes set up just outside the JFK8 parking lot entrance, and at the nearby public bus stop. Flyers were distributed. announcing the vote.

59.     In early June 2024, NYPD officers entered Amazon's property on several occasions and ordered Teamsters members employed by Amazon to vacate the premises or be issued citations for violating New York's trespass law, N.Y. Penal Law § 140.05. Although the Teamsters members were aware that these orders violated their Federal rights, they nonetheless complied to avoid arrest and prosecution. This marked escalation in interference with lawful activity directly correlated with ALU's increased lawful presence amidst active campaigning for the officer elections and with ALU's activities arising from the announced affiliation agreement with the Teamsters. During each interaction, the officers who arrived at the scene neglected to exercise independent judgment to assess the legality of the ALU activity. Instead, prior to taking any action and independently surveying the premises, the officers consulted with Amazon management, and acted on their instruction to deprive ALU members of federally protected rights.

60.     Despite these encounters, the ALU members, joined by other Teamster members from around NYC returned to Amazon's facility to exercise their Section 7 rights in order to bolster support for ALU affiliation with and thus strengthen their hand in forcing Amazon to negotiate with ALU.

61.     On June 12, 2024, Amazon management called the NYPD at the 121st Precinct after witnessing Plaintiffs Connor Spence and Sultana Hossain engaged in protected concerted activity

around the employee parking lot of the JFK8 facility. Upon arrival, officers of the NYPD's 121st Precinct consulted at length with Amazon management and subsequently arrested Spence and Hossain for violations of New York's trespass law, N.Y. Penal Law § 140.05. The arresting officer was Defendant s Doe 1 and Doe2. They were taken to the 121st Precinct and issued summonses. Hossain's summons is annexed as Exhibit F.

62.    At the time of their citation and ejection from the property, Spence and Hossain were distributing union literature supportive of Teamster affiliation, displaying union banners, and discussing the union with Amazon employees as they entered and left the employee parking lot.

63.    Both Spence and Hossain are "employees" of Amazon for purposes of the NLRA, since their terminations were being contested by the National Labor Relations Board. As such, they had a Section 7 right to distribute union handbills, display union signs, and otherwise communicate regarding the union with their coworkers in nonworking areas of Amazon's property. See *Republic Aviation Corp. v. NLRB,* 324 U.S. 793 (1945). An individual whose employment has ceased in connection with a labor dispute or unfair labor practice committed by an employer remains an "employee" of that employer for purposes of the NLRA. 29 U.S.C. § 152(3). Thus, such individual is entitled to all the rights and protection conferred to "employees" by the NLRA.

64.    Moreover, as Amazon is well aware, both have leaders in the ALU's ongoing efforts to negotiate a collective bargaining agreement with Amazon and were leading candidates in the upcoming ALU Officer election who needed to reach out to fellow members in order to secure their vote. (As discussed below, on July 30, 2024, Spence was elected President of ALU-IBT Local 1, and Hossain was elected the Recording Secretary.)

65.    Since their presence on the property was permitted under Federal law, Spence and Hossain contested the state trespass charges against them. The charges were dismissed by a

Richmond County Criminal Court Judge on June 29, 2024, without getting to the merits because the Summonses were completed incorrectly; the Police had failed to include the name of a complaining witness.

66.     Following these arrests, in order to safeguard its members' rights, the Teamsters Legal Department prepared a letter on June 28, 2024, attached as **Exhibit G**, to the Commanding Officer of the 121st Precinct, Defendant Lee. The letter apprised Lee of Amazon employees' right to engage in union activity on Amazon's property under Section 7, and it requested that the Precinct's officers therefore take no further action to impede or restrain Amazon employees engaged in such activities. Lee did not respond,

67.     On June 2024 Amazon counsel wrote a letter to counsel for Spence and Hossain which threatened to sue for civil trespass. See Exhibit H

68.     Counsel for Spence and Hossain responded to Amazon threatening to sue for malicious prosecution, since the arrests served no lawful purpose. Ex. C.

**Teamster Affiliation Approved – Arrests on July 1, 2024**

69.     On June 18, 2024, it was announced that over 800 members had voted, and that affiliation with IBT was approved by a vote of - .

70.     Immediately after the vote the Teamsters announced a plan for a national organizing drive against Amazon , with JFK8 effort at its heart.

71.     Subsequently, on June 28, 2024, following the dismissal of the charges against them, Spence, Hossain, and several dozen other ALU members employed by Amazon returned to nonworking areas of Amazon's property to again engage in activity protected by Section 7, such as displaying union signs and banners, distributing union literature, and discussing the union with their coworkers.

72.     These members returned to Amazon's facility the following day and engaged in similar activities. That day, NYPD officers arrived at the property at the behest of Amazon and again ordered the Teamsters members to leave. The members presented the officers with the above-mentioned letter from the Teamsters Legal Department (Exhibit G) , and the officers left the premises.

73.     On July 1, 2024, Amazon management, including defendants Adebodun Aina and Joe Troy, again summoned NYPD officers. Defendant Officers Salvatore D'Agostino and Salvatore Annunziata arrived and spoke with Defendants Aina and Troy. As before, the Teamsters members were distributing union materials and engaging in conversations with their coworkers regarding the union as they entered and exited the property. Again, the union members gave the first two officers who arrived at the property a copy of the letter attached as Exhibit G, informing them of their federal right to conduct union activity. Those two officers read the letter then informed Aina and Troy that the union members were conducting lawful activity then subsequently left the premises. However, Defendant Officers Salvatore D'Agostino and Salvatore Annunziata returned accompanied by Defendant Lee. Plaintiffs presented the letter annexed as Exhibit G to Defendant Lee anew, but to no avail. Under Defendant Lee's direct order, the ALU-Teamsters members were ejected from Amazon's property by the NYPD officers. Spence, Hossain, and Chioffi were arrested, taken to the 121st Precinct and issued summonses against them charging them with trespass and failure to disburse, under N.Y. Penal Law § §140.05, 240.20(5) and 240.20(6). A copy of the summonses is annexed as Exhibit I.

74.     As with the earlier charges, these charges were dismissed in Richmond County Criminal Court on July 19, 2024. These charges were dismissed by the Clerk because the Summonses had never been entered into the Criminal Court database. Upon information and belief,

this omission was intentional; the arrests and the summonses were being used as a form of intimidation and harassment/

75.    In a letter delivered via UPS on July 12, 2024, attached as Exhibit B, the Teamsters General Counsel, David O'Brien Suetholz, expressly advised then NYC Police Commissioner Edward Caban of Teamsters members' right to engage in organizing, collective bargaining, and other concerted activities under Section 7 in the non-work areas outside Amazon facilities. See Exhibit J. This letter went unanswered.

**The Third Arrests – July 17, 2024**

76.    On July 17, 2024, dozens of ALU members, joined by other Teamsters members staged a demonstration, beginning around 1:30 p.m., outside the parking lot, near Amazon's JFK8 and adjoining LDJ5 facility, to protest the company's refusal to engage in collective bargaining negotiations and other unfair labor practices. Those present chanted, picketed, displayed signs, distributed union literature, and engaged in other forms of expressive activity designed to protest the working conditions in Amazon's facility as well as the company's unfair labor practices.

77.    For the entirety of the demonstration, all participants were pursuing peaceful, lawful, and orderly expressive activities. At no time did they engage in any violent, aggressive, or disorderly conduct. Moreover, all participants in the demonstration confined their activities entirely to a grassy strip between Amazon's JFK8 and LDJ5 facilities and deliberately refrained from obstructing any vehicles or disrupting the regular flow of traffic in the area. It was an area which had been the scene of rallies by ALU in the past.

78.    This grassy strip is located in Lot 115 of Block 1760 in Staten Island, a narrow strip bisecting Amazon's JFK8 and LDJ5 facilities, which are located respectively in Lots 35 and 45. Lot 115 includes 5th St, the public street which services the two Amazon facilities and is abutted by the sidewalk and a grassy area.



*The grassy strip abutting 5th St, located in Lot 115 between Lot 45 (above 5th St) and Lot 35 (below 5th St), from which Plaintiffs' members were ejected, is highlighted in yellow and circled.*



*The grassy strip from which Teamsters members were ejected is highlighted in brown and circled; the boundaries of Lot 45, which houses Amazon's JFK8 facility, are highlighted in green.*

79.    Upon information and belief, this area is public property. Indeed, on past occasions, NYPD officers have expressly instructed ALU members that the grassy strip, as public property, is a lawful location from which to conduct labor demonstrations or other expressive activities protected by the First Amendment. Accordingly, the ALU had used this grassy strip to conduct similar demonstrations in several prior instances without interference from the NYPD.

80.    However, at approximately 5:00 p.m. on July 17, despite the peaceful and orderly nature of the demonstration, NYPD officers from the 121st Precinct, including the Individual

Police Defendants, at the express direction of Defendant Lee, ordered all participants to cease protesting, and disperse from the area. Upon information and belief, Defendants Aena, and/or Troy, acting at the behest of Amazon, called the 121st Precinct to complain.

81.     Although participants announced their intention to peaceably comply with the police order and began winding down their activities, the Individual Pollice Defendant Officer immediately entered the grassy strip and arrested seven select two ALU Members, Spence and Julien Mitchell-Israel (who at the time was a Teamster staff-member know to defendants Aina and Troy because of his ALU activity, and three other Teamsters staff members, while permitting the dozens of other Amazon employees participating in the demonstration to vacate the premises. Defendant Andrew Brown arrested and charged Connor Spence. All of those arrested were taken to the 121st Precinct and imprisoned. The arrested participants were subsequently issued summons for Trespass under N.Y. Penal Law § 140.05 and disorderly conduct under N.Y. Penal Law § 240.20, Disorderly Conduct for Failure to Disburse.

82.     Additionally, NYPD officers confiscated various personal items from those who were arrested, including their cell phones. These items were returned weeks later, following considerable effort and expense to recover them on the part of Plaintiffs.

83.     Upon information and belief, these actions were the result of Amazon and the NYPD's shared policy and/or custom. Specifically, the removal was requested by Amazon and expressly directed by Defendant Lee, an agent with final policymaking authority within the Precinct, acting based on her understanding of NYPD policy and custom.

84.     Moreover, upon information and belief, the arrests were made at the behest of Amazon. Namely, Adebodun Aina, Amazon's Operations Manager and Joe Troy, Amazon's

Regional Loss Prevention Manager, pointed out specific Teamsters members to NYPD officers on the scene. Those members were then arrested, detained, and issued citations by the officers.

85.    In what has by now become an unmistakable pattern, these charges were again dismissed by the Richmond County Criminal Court on August 1, 2024, because the Summons' were never entered into the Criminal Justice Computer system.

**October 14, 2014 Rally – Arrests Threatened**

86.    On October 14, 2024, ALU held a rally on the grassy area to the west of and across the road from the JFK8 Warehouse. In advance of the rally, IBT General Counsel Suetholz had conversations with NYPD's chief legal office Inspector David Gallagher, and was assured that the police would not interfere with the rally, which included setting up a canopy-tent.

87.    As the rally began, see Exhibit J, an NYPD van from the 121st Precinct drove up, and 4-5 NYPD Officers got out. Am Amazon security person began giving instructions to the officers about who to arrest. He specifically pointed out Plaintiffs Connor Spence and Pasquale Chioffi. A photo of the Amazon security employee giving directions to the police is annexed as Exhibit K.

88.    The arrests did not occur because ALU's attorney, Arthur Schwartz, challenged the officers present about the legality of the arrests, and the fact that they were being instructed to make arrests, and who to arrest, by an Amazon representative. The officers present, who were being videotaped, did not proceed with any arrests.

89.    The activities which Plaintiffs engaged in, describe above, are protected by Section 7 of the NLRA, which guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or

protection." 29 U.S.C. § 157. As discussed above, these rights have been held by the National Labor Relations Board to include engaging in Section 7 activities in the Parking Lot in front of JFK8, much less in the public right-of-way adjacent to JFK8.

90.     Notwithstanding the lawful nature of its employees' actions, Amazon has responded by unlawfully surveilling, harassing, threatening, and intimidating them. And, in concert with the NYC Police Department, Amazon has initiated the arrest of unlawfully fired JFK8 and LDJ5 employees, and other members of the IBT engaging in organizing activity, to be arrested on bogus charges which were then "thrown in the garbage" by the arresting officers.

91.     Upon information and belief, Defendants' ejection, and arrest of ALU and Teamsters members was the result of Amazon and the NYPD's shared policy and/or custom. Specifically, the removal was expressly approved and directed by Defendant Lee, despite warnings from Counsel to the IBT that her conduct suppressed the rights guaranteed by Federal Law. Defendant Lee is the official with the final policymaking authority within the Precinct and, upon information and belief, acted based on her understanding of NYPD policy and/or custom.

92.     Because of these arrests and citations, Teamsters members employed by Amazon have been inhibited from reentering Amazon's property, or areas adjacent to that property in order to lawfully exercise their Section 7 rights. Many ALU and Teamsters members, including now ALU President Connor Spence and Recording Secretary Sultana Hossain, have been unable to return to Amazon's property since the July 1 citations due to their apprehension that doing so will result in criminal prosecutions and/or penalties against them. Every time they even attempt to enter, Amazon security calls the NYPD, and the NYPD responds, and issues arrest warnings. In one of their most recent interventions, the Police Officers present stated to Plaintiff Spence, "If you don't like it, sue us." If not for this apprehension, these members would have returned to the

facility on a near-daily basis, as they had been doing in the months preceding the arrests, to promote the union among their coworkers, strengthen the union's campaign to force the Amazon to engage in collective bargaining negotiations, and participate in other concerted activity protected under federal law.

93.    The arrests, citations, and confiscation of private property have imposed substantial hardship on those singled out by Defendants and thus sent a clear message to all Amazon employees in New York City. Consequently, many Teamsters members have been inhibited even from returning to the grassy strip near the bus stop to engage in expressive activity protected by the First Amendment for fear of similar reprisals. Teamsters' members' constitutional and statutory rights have therefore been chilled by Defendants' meritless arrests and citations.

94.    Defendants' conduct has effectively monopolized every conceivable physical forum where Plaintiffs may exercise their Section 7 and First Amendment rights. Without access to the capacious parking lot and the grassy strip, Plaintiffs can no longer register any opinion, voice any concern, or organize other employees in a manner that deigns to contravene Amazon's own interests.

**Amazon Directs Arrests Elsewhere in NYC**

95.    Defendants' deprivation of Teamsters members' Federal rights has not been limited to Staten Island or the 121st Precinct alone; it has occurred wherever Teamster members have attempted to engage in expressive activity protected by the First Amendment or concerted activity protected by Section 7 on or around Amazon's property throughout New York City, including, for instance, at Amazon's DBK4 fulfillment center, located at 55-15 Grand Ave, Queens, NY 11378.

96. Teamsters' members have been assisting the organizing efforts of employees at Amazon's DBK4 fulfillment center for several months. Of course, as an attempt to "form [or] join … [a] labor organization[]," these activities are protected by Section 7.

97. On at least two occasions, Amazon management at the DBK4 facility erroneously believed that Amazon employees, joined by Teamsters members and organizers, were intending to engage in activities protected under Section 7 and the First Amendment, such as rallies, demonstrations, or an employee walkout, at or near Amazon's property. Upon information and belief, Amazon conveyed its false impressions to Defendants, and NYPD officers preemptively appeared on the scene in order to suppress the anticipated activities, even though no such actions were actually planned or in fact occurred.

98. For example, during the week of July 21, 2024, employees of Amazon's DBK4 Fulfillment Center informed Teamsters members engaged in efforts to organize employees at the facility that Amazon's management believed the employees were planning to engage in a demonstration that week. On the morning of July 24, 2024, NYPD officers erected metal barricades around DBK4's premises, and both NYPD officers and Amazon management actively surveilled and patrolled the scene—even though no action was in fact planned, and none occurred.

99. Second, the week of August 11, 2024, Amazon management falsely believed that DBK4 employees, working alongside Teamsters organizers, planned to participate in an employee walkout. Accordingly, on the morning of August 14, 2024, NYPD officers again appeared on the scene and erected metal barricades to forestall Amazon's employees' ability to engage in concerted activity protected by Section 7—whether they in fact intended to do so or not.

 

*Barriers erected by the NYPD on the morning of August 14, 2024.NYPD presence outside Amazon's DBK4 fulfillment center on August 14, 2024.*

100.    Upon information and belief, Defendants' actions occurred as a matter of the NYPD's policy and/or custom, as demonstrated both by the regularity with which the NYPD has taken these and similar actions and by the Defendants' overall pattern of conduct, of which these actions constitute only one component.

101.    Moreover, as a result of Defendants' actions, Teamsters members have become inhibited from exercising their federal rights to engage in labor organizing or expressive activity at or around Amazon's property due to their belief that Defendants, working hand-in-glove with Amazon, will respond by suppressing, impeding, and restraining them.

102.    Indeed, Defendants' actions, as a whole, reveal a manifest unwillingness to permit Amazon employees and Teamsters members to exercise their right to form labor unions, collectively bargain, or engage in concerted activities for the purposes of collective bargaining or

other mutual aid or protection throughout New York City—at least as far as Amazon is involved. Likewise, Defendants have proven unwilling to permit Teamsters members to exercise their First Amendment rights to engage in expressive activity on public property adjoining or near Amazon's facilities in New York City. No matter where Teamsters members have attempted to exercise these rights against Amazon, the NYPD has invariably acted to thwart, undermine, and suppress them.

**The Planned Strike and NYPD Interference**

103.    On or about December 1, 2024, IBT President Sean O'Brien publicly authorized a national strike against Amazon at facilities where various organizing drives were underway. JFK8 is, to date, the only facility where the ALU and/or the Teamsters has been certified as the collective bargaining representative. At facilities like DBK4, employees will picket, but there may or may not be an effort to get employees to walk off the job en masse.

104.    On December 19, 2024, ALU engaged in small scale activity in preparation for the strike, on the side of the road outside of JFK8, and on the streets adjacent to JFK 8. ALU set up its canopy tent on the grassy area across from the first JFK8 parking lot entrance, and had 2-4 ALU members walking with signs in a crosswalk, which is visible in Paragraph 78 above. No traffic was being stopped, although cars and trucks did slow down to see what was going on the side of the road.

105.    Counsel for ALU was present. He was called by an attorney representing the NYPD, who told him that even the 4 picketers could not walk back and forth across the road in front of JFK8. ALU Counsel suggested that the pickets remain in the grassy area across the road from the JFK8 Warehouse. A short while later NYPD counsel called back and said that that would be ok. Moments later he called again and stated that Amazon objected and stated that it was their property. Shortly thereafter, a number of Defendant Police Officers, actually dismantled,

confiscated a tent structure set up on a grassy area on the side of the road across from JFK8, which had supplies and refreshments underneath it.

106.    Counsel for ALU then discussed a possible picket line further up the road, where the road passing by the JFK8 Parking Lot ends, and turns left onto 10th Avenue, which then leads to gates across 10th Avenue constructed by Amazon. That gated area is the entrance to a truck parking area, and is the place where packages get delivered to and get transported from JFK 8. ALU counsel discussed with NYPD counsel the union's desire to picket on the side of the road, either where the road turns, or outside the Amazon fenced off area (which is actually a fence across a public street). The NYPD counsel told ALU Counsel that no picketing would be allowed in those areas because it might cause trucks to back up. ALU Counsel forswore any intent to block trucks from entering and argued that the picketers would stay on the side of a public road. NYPD Counsel stated that such picketing would not be allowed.

107.    The NYPD, and the individual Defendants, have made it clear that they will not permit any picketing activity anywhere near the JFK8 Amazon warehouse, even if that picketing is on the side of the road, or on the road but not disruptive of traffic It is clear that the NYPD, 121st Precinct Commanding Officer Lee, and 121st Precinct Captain DeVito and the remaining individual police officer defendants, will become involved in blocking and arresting picketers as the strike unfolds beginning on December 21, 2024.

## IRREPARABLE INJURY

108.    The arrests, citations, and confiscation of private property have imposed substantial hardship on those singled out by Defendants and thus sent a clear message to all Amazon employees in New York City, especially those at JFK8. Given the threat of arrest ALU members are being inhibited even from returning to the grassy strip near the bus stop to engage in expressive

activity protected by the First Amendment for fear of reprisals. The negotiations held between ALU counsel and NYPD counsel on the morning of December 19, 2024, made that clear.

109.    The NYPD, particularly Commanding Officer Lee and Captain Divito, have made it clear that they will not permit any expressive activity which Amazon disapproves of. ALU members' constitutional and statutory rights have therefore been chilled by the NYPD, and NYPD Defendants' meritless arrests and citations, all done on the behest of Amazon, which functions here as a governmental entity.

110.    Defendants' conduct has effectively monopolized every conceivable physical forum where Plaintiffs may exercise their Section 7 and First Amendment rights. Without access to the capacious parking lot and the grassy strip, or the end of 5th Street, where it turns into 10th Avenue. Plaintiffs are being prevented from effectively registering their opinions or organizing other employees in a manner that deigns to contravene Amazon's own interests, which in this setting violate the National Labor Relations Act.

111.    The contract fight at JFK8, and the planned 3-day Unfair Labor Practice Strike starting on December 21, are key to organizing Amazon employees nationwide. That campaign will suffer irreparable injury if the NYPD, Defendants Lee and Divito, and the Individual Police Officer Defendants continue to be used as a private police force by Amazon to stifle the right of the Plaintiffs, and the thousands that they represent.

## AS AND FOR A FIRST CAUSE OF ACTION

*All Defendants Violated 42 U.S.C. § 1983 by Depriving Plaintiffs and Their Members of their Rights Under the First Amendment to the U.S. Constitution*

112.    Plaintiffs incorporate by reference all allegations and assertions contained in paragraphs 1-111 as if set forth fully herein.

113.    The First Amendment to the U.S. Constitution guarantees that government may make no law "abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment has been incorporated against the states through the Fourteenth Amendment. U.S. CONST. amend. XIV; *Gitlow v. New York*, 268 U.S. 652 (1925).

114.    By calling attention to Amazon's poor working conditions and unfair labor practices, Plaintiffs' members were engaged in expressive activity protected by the First Amendment.

115.    Public streets and sidewalks, such as the grassy strip adjoining Amazon's facility, are traditional public forums. *McCullen v. Coakley*, 573 U.S. 464, 476-77 (2014). Thus, any governmental interference with protected expressive activities in such locations triggers heightened scrutiny under the First Amendment. *Id.* That is, limitations on expression may be upheld only if they are "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, they are narrowly tailored to serve a significant governmental interest, and they leave open alternative channels for communication of the information." *Id.* at 477 (internal quotations omitted).

116.    Defendants' meritless application of N.Y. Penal Law §§ 140.05 (trespass) and § 240.20 (disorderly conduct) to Plaintiffs' members was not content-neutral because other forms of expressive activity are and have been permitted in the grassy strip without limitation by Defendants, such as the display of signs advertising or promoting commercial enterprises, in addition to prior rallies and demonstrations. Upon information and belief, Defendants have taken no action to restrict or prohibit any such expressive activity.

117.    Prior to June 2024, NYPD had not limited demonstrations occurring on the grassy strip. On the contrary, NYPD officers have expressly advised that the strip would be a suitable

31

location to engage in such activities. Violations of N.Y. Penal Law §§ 140.05 and 240.20 were thus unlawfully charged against Plaintiffs Spence, Mitchell-Israel, and IBT staff to restrict the content of their speech only after the ALU affiliated with the IBT, and to chill further exercise of free speech in this public space.

118.    Second, even if it did not constitute content-based discrimination, Defendants' total prohibition of Plaintiffs' members' expressive activity on the grassy strip, and on the side of the streets outside the Amazon facility is not narrowly tailored to serve a significant governmental interest. No such government interest is at stake here, for the demonstrators have never engaged in any violent, disruptive, or disorderly conduct or otherwise interfere with the ordinary flow of traffic or commerce. Indeed, as discussed above, ALU has engaged in expressive activity in the same locations prior to June 2024 without causing any sort of damage, disruption, or disorder justifying government suppression.

119.    And third, even if some significant governmental interests were implicated, Defendants' restriction on Plaintiffs' members' expressive activity does not leave open alternative channels for communication, since there is no other suitable public property or location nearby from which they can communicate their message to its intended audience.

120.    Defendants' actions therefore violated and threaten to continue to violate, Plaintiffs' members' First Amendment right to engage in speech and expressive activities.

121.    The First Amendment guarantees the right "of the people peaceably to assemble." U.S. Const. Amendment. I. This guarantee has also been incorporated against the states through the Fourteenth Amendment. U.S. Const. Amendment. XIV; *see DeJonge v. Oregon*, 299 U.S. 353 (1937).

122.    This guarantee includes the right to assemble on public streets and sidewalks. *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969). Because these rights are "fundamental," any governmental abridgement thereof triggers strict scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

123.    Accordingly, Defendants' restriction of Plaintiff ALU, and Plaintiff ALU's members' right to peaceably assemble is also a violation of the First Amendment, for it is not narrowly tailored to achieve a compelling governmental interest, as explained above.

124.    Furthermore, Defendants' wrongful actions, and threatened actions have chilled Plaintiffs' members' exercise of their right to engage in protected First Amendment activity, and, without redress from this Court, will continue to do so.

125.    By ejecting Plaintiffs' members from public property through the threat and act of criminal prosecution, Defendants' conduct was a direct and proximate cause of the deprivation of rights suffered by Plaintiffs and the members of ALU and IBT. In addition, at all times relevant to this action, Defendant NYPD personnel were acting under color of state law in their capacity as NYPD officers.

126.    Therefore, Defendants, jointly and severally, have deprived, and will, if not enjoined by the Court, will continue to deprive Plaintiffs and their members of their First Amendment rights of speech and assembly under color of state law in violation of 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

*All Defendants Violated 42 U.S.C. § 1983 by Depriving Plaintiffs and Their Members*
*of Their Rights Under 29 U.S.C. § 157.*

127.    Plaintiffs incorporate by reference all allegations and assertions contained in paragraphs 1-126 as if set forth fully herein.

128.    Section 7 of the NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

129.    The Supreme Court has recognized that employees have the right under Section 7 to enter nonworking areas of their employer's property for the purpose of communicating with their coworkers regarding unionization. *Republic Aviation Corp.*, 324 U.S. at 802 n. 8 ("[I]t is not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property") (internal citations omitted); *see also Lechmere, Inc. v. NLRB*, 502 U.S. 527, 533 (1992) ("No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline") (quoting *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112-13 (1956)).

130.    Furthermore, as discussed above in Paragraphs 35-43, the National Labor Relations Board has determined that ALU and employee access to the parking lot in and around JFK8, and other Amazon Facilities for the exercise of Section 7 rights must be respected by Amazon. As we stated above, the NLRB has, on September 10, 2024, issued an Order that Amazon must.

> Cease and desist from
>
> (a) Promulgating, maintaining and enforcing rules or policies that unlawfully prohibit off-duty employee access to exterior, nonwork areas of the Respondent's facilities.
>
> (b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed by Section 7 of the Act.

131.    This right, derived from Federal law, supersedes any contrary or conflicting state law, including state property laws, under the Supremacy Clause of the U.S. *Constitution. U.S. CONST. Art. VI, Cl. 2.*

132.    Thus, Defendants wrongfully deprived Plaintiffs Spence, Hossain, and other members of ALU and IBT of their rights under Section 7 of the NLRA by forcibly ejecting them from Amazon's property through arrest and the issuance of meritless summons charging trespass during their lawful efforts to engage in self-organization and other protected concerted activities on the property on the exterior of JFK8, and only commencing doing so when ALU affiliated with the IBT.

133.    Furthermore, Defendants' wrongful actions have chilled Plaintiffs' members' right to engage in concerted activities protected by Section 7. Only this Court can restrain the NYPD, Defendant Lee, and the other Individual Police Defendants, from interfering with these rights at the instigation of Amazon, Troy and Aina. Without redress from this Court, the rights of Plaintiffs and their members will continue to be infringed.

134.    By removing the employees from areas around Amazon's premises through the threat and act of criminal prosecution, by imprisonment, and by seizure of tents, cell phones and other private property, Defendants' conduct was a direct and proximate cause of the deprivation of rights suffered by Plaintiffs and their members.

135.    Accordingly, Defendants deprived Plaintiffs and their members of their Section 7 rights under color of state law in violation of 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION
(Against Defendants Annunziata, Brown, Zahrieh)

136.    Plaintiffs incorporate by reference all allegations and assertions contained in paragraphs 1-135 as if set forth fully herein.

137.    By the arrest of Plaintiffs Spence, Hossain, Cioffi and Mitchell-Israel on unconstitutional charges, placing them in a cell, taking their property, and then by not entering the summonses into the Criminal Court data base, Defendants Annunziata, Brown, Zahrieh, and John Does 1-4, with the authorization of Lee, falsely imprisoned Plaintiffs Spence, Hossain, Cioffi and Mitchell.

138.    Defendant NYPD is liable for this false imprisonment because at all times it employed Defendants Annunziata, Brown, Zahrieh, and John Does 1-4, and said defendants were acting within the scope of their employment.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Against Defendants Amazon, Aina and Troy for Malicious Prosecution)

139.    By Plaintiffs incorporate by reference all allegations and assertions contained in paragraphs 1-138 as if set forth fully herein.

140.    By making what they knew to be false and unlawful allegations of trespass against Plaintiffs Spence, Hossain, Cioffi and Mitchell -Israel to the NYPD, and causing said Plaintiffs to be arrested and placed into jail cells, on unconstitutional charges, defendants Amazon, Aina and Troy engaged in malicious prosecution of said Plaintiffs.

141.    Defendant Amazon is liable for this malicious prosecution because at all times it employed and encouraged this action by Defendants Aina and Troy, and said defendants were acting within the scope of their employment.

## DAMAGES

142.    By their actions described above, Defendants have caused, and if allowed to continue with their actions will cause irreparable injury to ALU, IBT and the Amazon employees they represent.

143.    The arrests of Spence, Hossain, Cioffi and Mitchell-Israel, and the ongoing threat to do it again caused each plaintiff emotional distress, and anxiety, to their injury in a sum to be determined at trial.

144.    The actions described above were taken maliciously and with reckless disregard for the rights of the individual plaintiffs and the members of ALU and IBT, entitling Plaintiffs to an award of punitive damages in the sum of $25 million dollars ($25,000,000).

## JURY DEMAND

145.    Plaintiffs demand a jury trial on all claims.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    On Their First Cause of Action:

1.    Enter a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining the Defendants from engaging in any conduct interfering with Plaintiff or its members' First Amendment rights, thereby requiring that Defendants permit Plaintiff and its members to engage in expressive activity, including peaceful labor demonstrations or picketing, in and around all public sidewalks, easements, and rights-of-way around Amazon's facilities in New York City, including but not limited to its JFK8 warehouse;

2.    Issue a declaratory that Defendants' actions have been unlawful deprivations of Plaintiffs' and their members' First Amendment rights;

3.      Award the individual plaintiffs compensatory damages for the distress and anxiety caused by the violation of and the threat to continue violating their constitutional rights;

4.      Award Plaintiffs punitive damages in the sum of $12.5 million;

5.      Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

6.      Grant any and all other relief this Court may deem equitable, just, and proper.

B.      On Their Second Cause of Action

1.      Enter a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining the Defendants from engaging in any conduct interfering with Plaintiffs or their members' rights under 29 U.S.C. § 157, thereby requiring that Defendants permit Plaintiffs and their members to engage in protected concerted activity for mutual aid or protection on or around nonworking areas of Amazon's facilities, including but not limited to the non-working areas at its JFK8, including its parking areas;

2.      Issue a declaration that Defendants' actions have been unlawful deprivations of Plaintiffs' and their members' rights under 29 U.S.C. § 157;

3.      Award the individual plaintiffs compensatory damages for the distress and anxiety caused by the violation of and the threat to continue violating their statutory rights;

4.      Award Plaintiffs additional punitive damages in the sum of $12.5 million;

5.      Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

6.      Grant any and all other relief this Court may deem equitable, just, and proper.

C.      On Their Third and Fourth Causes of Action

1.      Award the individual plaintiffs compensatory damages for the distress and anxiety caused by their unlawful arrests and imprisonment; and

2.      Grant any and all other relief this Court may deem equitable, just, and proper.

Dated:  New York, New York
       December 19, 2024

                               ADVOCATES FOR JUSTICE,
                               CHARTERED ATTORNEYS
                               Attorneys for Plaintiffs

                               By: */s/ Arthur Z. Schwartz*
                               Arthur Z. Schwartz, Esq
                               Sommer Omar, Esq
                               225 Broadway, Suite 1902
                               New York, New York 10007
                               (212) 285-1400
                               aschwartz@afjlaw.com

## **<u>VERIFICATION</u>**

Connor Spence declares, under penalty of perjury, that he is a plaintiff in the within

action, that he has read the foregoing Complaint, and that it is true to his knowledge,

information, and belief.

Dated:  New York, New York
        December 19, 2024

*Connor Spence*
Connor Spence